**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: KAREN L. HELTON, | ) | Case No. 11-60126-LYN |
| | ) | |
| Debtor, | ) | |
| | ) | |
| KAREN L. HELTON | ) | Adv. No. 11-06028 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | Adv. No. 11-06030 |
| KAREN L. HELTON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| KAREN L. HELTON | ) | Adv. No. 11-06031 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NAVY FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the court on three complaints filed by Karen L. Helton ("the Debtor"), one in each of the above-styled adversary proceedings, seeking a judgment in each proceeding avoiding the judicial liens of The Bank of New York Mellon ("New York Mellon") ,

1

Wells Fargo Bank, N.A. ("Wells Fargo") and the Navy Federal Credit Union ("NFCU") (Collectively "the Defendants"). Each of the Defendants failed to answer its respective complaint and the Debtor filed a motion for default judgment in each adversary proceeding. The Chapter 13 trustee opposes the three motions.

Also before the court is the confirmation hearing on the Debtor's Chapter 13 plan of reorganization ("the Plan"). The Chapter 13 trustee objects to confirmation of the plan.

*Facts*

On July 8, 2009, the Debtor filed a Chapter 7 petition with the Clerk of this Court.[1] In that case, the Debtor scheduled four parcels of real property ("the Real Properties"). The Debtor also scheduled eight claims that were secured by the Real Properties which claims totaled $1,599,167.00. Four of the eight scheduled claims were scheduled as fully unsecured. The Debtor scheduled no priority unsecured claims. The Debtor scheduled general unsecured claims in the total amount of $81,098.00. The Debtor received a discharge in the normal course and the case was closed.

On January 18, 2011, the Debtor filed a petition initiating the above-styled Chapter 13 case. She scheduled no priority unsecured claims or general unsecured claims. She scheduled three parcels[2] of real property including 103 Cavalry Court, Strasburg, Virginia, with an assessed value of $131,700 (hereafter "Cavalry Property") and 1943 Martina Way, Culpeper County, Virginia, with an assessed value of $235,000 (hereafter "Martina Property"). The Martina property is the Debtor's residence.

The Debtor also filed the three above-styled adversary proceedings seeking to avoid the

---

[1] That case was designated as Case no. 09-62177 by the Clerk of the Court.

[2] In October of 2010, the Debtor lost title to, and possession of, one of the Reap Properties.

2

lien of The Bank of New York Mellon in the amount of $48,417 against the Cavalry Property, the lien of Wells Fargo Bank in the amount of $51,136 against the Martina Property and the lien of NFCU in the amount of $87,000 against the Martina Property.

The Debtor's Plan provides that the liens are to be avoided. The Plan provides that a dividend of 2.5% will be paid to the three lien holders as unsecured claimants.

None of the Defendants answered and the Debtor filed a motion for default judgment in each adversary proceeding. The Chapter 13 trustee opposes entry of any judgment permitting the Debtor to avoid any of the three liens.

## *Discussion*

This matter comes before the court for consideration of two issues, whether the Debtor may avoid the Defendants' liens and whether the Debtor's Chapter 13 plan may be confirmed.

I.

The first issue before the court is whether a debtor may avoid a lien in a Chapter 13 bankruptcy case if the value of the collateral is less than all senior liens and if the debtor is not eligible to receive a discharge in the case. In this instance, each lien in question is wholly unsecured. Convention dictates that the avoidance of a lien that is wholly unsecured is referred to as a "strip off", whereas the avoidance of a lien that is partially secured is referred to as a "strip down".

The rules that determine whether a lien may be avoided are gleaned primarily from Bankruptcy Code Sections 506 and 1322, and from two Supreme Court cases, Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

We begin with the long-held proposition that a lien on property of the debtor survives the

3

issuance of discharge. See Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, (1886) (A lien created pre-petition by mortgage on property of the debtor is not affected by the discharge.). Also see Farrey v. Sanderfoot, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) and Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991).

Section 506(a)&(d)[3] of the Bankruptcy Reform Act of 1978 seemed to alter this rule. Section 506(a) provides in relevant part that an allowed secured claim of a creditor is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property and is an unsecured claim to the extent that the value the creditor's interest is less than the amount of such allowed claim. Section 506(d) provided that to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, with certain exceptions not relevant here. Taken together they seemed to provide that the amount of the lien held by a creditor would be reduced to the extent that the creditor's claim exceeded the value of the collateral. It would follow that a lien that was secured by property the value of which was less than the amount of the lien could be stripped down. It would also follow that a lien that was secured by property the value of which was less than the amount of all senior liens could be stripped off.

---

[3] Section 506(a)&(d) provide in full:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
. . .
(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

In Dewsnup the Supreme Court held that a Chapter 7 debtor cannot "strip down" a creditor's lien on real property to the judicially determined value of collateral, when the creditor's claim was secured and had been allowed in its full amount. A number of circuits, including the Fourth Circuit Court of Appeals, have extended the scope of this rule and held that a debtor may not completely strip off a lien in chapter 7 either. See Ryan v. Homecomings Financial Network, 253 F.3d 778, 782 (4th Cir. 2001).

The rule in Dewsnup does not apply to Chapter 13 cases because Section 1322(b)(2)[4] provides that a debtor may modify a secured claim other than a claim secured exclusively by the debtor's residence. In Nobleman, the Supreme Court held that, although a Chapter 13 plan may modify a secured claim under Section 1322(b)(2), that section prohibits a debtor from avoiding a lien that is partially secured by an interest in the debtor's residence.[5] A majority of courts have declined to extend the limitation to liens that are wholly unsecured and have held that a Chapter 13 debtor may use Section 506(a) and 1322(b)(2) to avoid a lien that attaches to the debtor's residence if the claim is completely unsecured. This majority position has been adopted by all five Courts of Appeals to consider the issue, as well as two Bankruptcy Appellate Panels. See Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663, 667-69 (6th Cir.2002); Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 126 (2d Cir.2001); Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357, 1359-60 (11th Cir.2000); In re Bartee, 212 F.3d 277, 288, 295 (5th

---

[4]    Section 1322(b )(2) provides:

Subject to subsections (a) and (c) of this section, the plan may–
. . .
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

[5]    A lien may not attach to any property other than the debtor's residence in order to qualify for the exception under Section 1322(b)(2). That requirement is not relevant to this discussion and so it is ignored in the following discussion.

Cir. 2000); McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 611 (3d Cir.2000); Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 840 (B.A.P. 1st Cir.2000); and In re Lam, 211 B.R. at 36, 40-41 (9th Cir. B.A.P. 1997).

Generally speaking[6], and for purposes of this inquiry, in a Chapter 7 case, a debtor may not strip down or strip off a lien. In Chapter 13, however, a debtor may strip off or strip down a lien that attaches to property of the estate that is not the debtor's residence and may strip off, but not strip down, a lien that attaches to the debtor's residence.

All of the foregoing assumes that the debtor will receive a discharge. Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[7], it was rare for a debtor to be denied a discharge in a chapter 13 case if she completed her performance under the plan. Consequently, the issue of the effect of a denial of discharge on a debtor's ability to strip down or strip off a lien was rarely an issue. BAPCPA, however, included a new section, Section 1328(f)(1), that provides that a debtor cannot obtain a discharge in a chapter 13 case that is filed within four years of filing a Chapter 7 case in which the debtor received a discharge.

The question, then, is whether Section 1328(f)(1) and Section 1325(a)(5) act together to provide an exception to the rule created by Dewsnup, Nobleman, Section 506(a) and Section 1322(b)(2). There is no clear consensus among the courts. This Court agrees with the courts that hold that Section 1328(f)(1) does not prohibit a Chapter 13 debtor from stripping off a wholly unsecured lien.

---

[6] This discussion ignores the effect of the "hanging paragraph" that is placed at the end of Section 1325(a) and modifies Section 1325(a)(5).

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective on October 17, 2005. See Pub. L. No. 109-8, 119 Stat. 23 (2005).

6

As a preliminary matter, it should be noted that Section 1325 concerns the requirements for plan confirmation and contains no direct reference to or restriction on lien avoidance. This fact notwithstanding, a number of courts have held that it restricts plans in such a manner as to provide an additional exception to the rules concerning lien avoidance.

The analysis begins with Section 1325(a)(5)[8] which provides that the court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan, the plan provides (1) that the holder of such claim has accepted the plan or (2) that the secured claim shall be paid in full or (3) that the debtor will receive a discharge or (4) that the debtor will surrender the collateral securing the claim. The Debtor's plan provides for none of these requirements with respect to the claims of the Defendants. Accordingly, the plan cannot be confirmed if the claims are secured claims. And if the plan cannot be confirmed, then any avoidance of the lien securing the claim would itself be void upon the ultimate dismissal of the case, see 11 U.S.C. § 349(b)(1)(C) or conversion, see 11 U.S.C. § 349(f), one of which must follow if the a plan is not

---

[8] Section 1325(b)(5) provides :

Except as provided in subsection (b), the court shall confirm a plan if--
    (5) with respect to each allowed secured claim provided for by the plan--
    (A) the holder of such claim has accepted the plan;
    (B)(I) the plan provides that--
        (I) the holder of such claim retain the lien securing such claim until the earlier of--
            (aa) the payment of the underlying debt determined under nonbankruptcy law; or
            (bb) discharge under section 1328; and
        (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
    (iii) if--
        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
    (C) the debtor surrenders the property securing such claim to such holder;

confirmed in this case.

The answer to the pivotal question, then, hinges on whether a claim in Chapter 13 that is wholly unsecured is an "allowed secured claim." In determining whether a debtor could strip off a lien that was completely under water, the Ninth Circuit Court of Appeals wrote:

> . . . Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the debtor's property, § 506(a) makes clear that the status of a claim depends on the valuation of the property:
>
>> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.
>
> 11 U.S.C. § 506(a). To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that [the creditor's] claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

In re Zimmer, 313 F.3d 1220, 1222-23 (9th Cir. 2002).

The leading bankruptcy treatise agrees with this analysis:

> The Nobelman opinion strongly suggests ... that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was "still the 'holder' of a 'secured claim' because petitioners' home retain[ed] $23,000 of value as collateral." If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not have been a "holder of a secured claim" entitled to protection by section 1322(b)(2).

5 Collier on Bankruptcy, § 1322.06[1][a] at 1322–16 (15th Ed.1989). Also see In re Tran, 431 B.R. 230 (Bankr. N.D.Cal. 2010) and In re Pollard, 2011 WL 576599 (Bankr. D.Md. 2011) (Indicating that the Court had previously followed Tran.) It is concluded that there is nothing in the Bankruptcy Code that prohibits the Debtor in this case from avoiding wholly unsecured in

8

rem claims even though she will not receive a discharge in this case.

The Chapter 13 trustee cites In re Gerardin, 447 BN.R. 342 (Bankr. S.D.Fla. 2011) for the proposition that an *in rem* claim in Chapter 13 is a secured claim, even if the entire claim is under water. The reasoning in Gerardin is based on Johnson v. Home State Bank, 501 U.S. 78 (1991). In Johnson, the creditor held a first priority lien on the debtor's residence. The debtor filed a Chapter 7 petition and obtained a discharge. The creditor received a judgment for the value of the residence. The debtor filed a Chapter 13 petition and provided for the judgment in the Chapter 13 plan. The Bank objected to the plan asserting that it did not have a claim against the debtor. The Supreme Court held that a mortgage lien securing an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a "claim" within the meaning of § 101(5) and is subject to inclusion in an approved Chapter 13 reorganization plan.

The facts and the relevant issue in Johnson differ from those in Gerardin and from those in the case at bar. In Johnson, the creditor held a senior lien that attached to some or all of the property's value. In Gerardin and in the instant case, liens senior to the creditor are greater than the value of the property, so there is no property for the liens to attach to. In Johnson, the issue was whether the creditor had a "claim"; in Gerardin and in the adversary proceedings at bar, the issue is whether the claim is secured and thus subject to the strictures of Section 1325(a)(5). This Court can find nothing in Johnson that supports the proposition that a creditor has a secured claim if the amount of all senior liens are greater than the value of the property.

The Chapter 13 trustee also cites In re Jarvis, 390 B.R. 600 (Bankr.C.D.Ill.2008). In Jarvis, the factual paradigm mirrored that in the case at bar. The debtor owned real property that was valued in an amount that was less than the first deed of trust. He filed a Chapter 7 petition and received a discharge that discharged a debt arising under a second deed of trust. The lien

9

securing that debt was unaffected by the discharge or any other activity in the case.  Soon after the case was closed, the debtor filed a Chapter 13 petition.  The plan provided that lien would be avoided even though he was not eligible for a discharge in the Chapter 13 case.  The Court denied confirmation on the grounds that the lien could not be avoided because the debtor would not receive a discharge even if he completed performance under the plan.

In Tran, the Court analyzed the reasoning in Jarvis as follows:

> . . . [T]here are, to date, at least four bankruptcy court cases that looked beyond the Bankruptcy Code's language to support a contrary view. The most often cited of these cases is In re Jarvis, 390 B.R. 600 (Bankr.C.D.Ill.2008). In Jarvis, the court held that "[c]onsistent with its past practice, this Court also holds that the lien-avoiding effect of the confirmed plan, while established at confirmation, is contingent upon a discharge pursuant to Section 1328." Apart from "past practice," the primary authorities cited by Jarvis were In re Lilly, 378 B.R. 232 (Bankr.C.D.Ill.2007) and In re King, 290 B.R. 641 (Bankr.C.D.Ill.2003), cases out of the same district.
> Lilly, however, dealt with the rights of "holders of secured claims" and § 1325(a)(5)(B)(i)(I)(bb), which expressly conditions any permanent modification of the rights of a holder of a secured claim on either full payment of the underlying contractual debt or the debtor receiving a "discharge under section 1328." [Footnote omitted.]  The holder of a lien that is wholly unsecured, however, is not the holder of a secured claim. In re Zimmer, 313 F.3d at 1225–26. Thus, Jarvis's reliance on Lilly is misplaced. (The Jarvis court acknowledged that Lilly was distinguishable because the liens at issue therein, unlike the liens at issue in Jarvis, were secured claims under § 506(a). Jarvis, 390 B.R. at 605.)
> . . .
> The other decision on which Jarvis is based is King.  King however, upheld a chapter 13 debtor's right to strip off a wholly unsecured lien, King, 290 B.R. at 643, and the debtor therein was eligible for a discharge.  King, 290 B.R. at 651. Thus, although the King court did state in its concluding paragraph that the lien avoiding effect of the plan was contingent upon the debtor receiving a discharge, this was purely dictum, and not at issue in the case.

Tran, 431 B.R. at 235-236.

This Court agrees with the reasoning in Tran.  Jarvis is based on King and Lilly, both of which are factually distinguishable from the case at bar.  Further, Jarvis provides no independent reasoning that connects Sections 1328(f)(1) and Section 1325(a)(5) in a manner that would

prohibit a debtor from stripping down a lien just because he or she is ineligible for a discharge. It is concluded that there is nothing in the Bankruptcy Code that prohibits a chapter 13 debtor who is not eligible for a discharge from stripping down or stripping off liens as otherwise permitted.

## II.

We turn next to the issue of confirmation. The Chapter 13 trustee argues that the plan is not proposed in good faith. A bankruptcy court shall confirm a plan if, among other things, the plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3).

The Fourth Circuit Court of Appeals has provided guidance for trial courts in considering whether a plan is proposed in good faith.

> While no precise definition can be sculpted to fit the term "good faith" for every Chapter 13 case, we think the generally accepted definition of "good faith" as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides the general parameters:
>
>> A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan....
>
> 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978), cited in In re Goeb, 675 F.2d 1386, 1390 n. 9; In re Rimgale, 669 F.2d 426, 431 (7th Cir.1981); In re Terry, 630 F.2d 634, 635 n. 3 (8th Cir.1980).

Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982).

The determination of whether a Chapter 13 plan has been proposed in good faith is to be determined by considering all militating factors. Deans, 692 F.2d at 972. The totality of circumstance must be examined on a case by case basis. Id. Factors that are to be considered

11

include, but are not limited to, the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.  Id.

As with any totality-of-the-circumstances test, the inquiry does not consist of a simple accounting.  Carolin Corp. v. Miller, 886 F.2d 693, 701 (4th Cir. 1989).  ("The dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing particular facts into previously identified patterns is obvious, and must be guarded against.")   No single factor will necessarily lead to a finding of bad faith.  Id.   Each factor is to be considered in light of its weight and relevance in the case under consideration.  A factor that is determinative in one case may be of no consequence in another.

The factors that are relevant in this case are (1) the debtor's past bankruptcy filing; (2) the nature and amount of unsecured claims; and (3) the percentage of proposed repayment. Consideration of these factors leads the court to conclude that the plan was filed in bad faith.

The Debtor filed one previous petition in bankruptcy in the last eight years, the Chapter 7 petition that was filed on July 8, 2009.  That case was closed on July 22, 2010.  The Debtor filed the current petition on January 18, 2011, less that six months after the Chapter 7 case was closed. Her payments on her vehicle, her residence, and her two rental properties are current.  She scheduled no unsecured claims in her Schedule F.  Her Chapter 13 plan ("the Plan") indicates that the Defendants hold unsecured in rem claims in the total amount of $176,000.00.  The Debtor proposes to pay a total of $5,760.00 over a thirty-six month period through the Plan.

After the administrative claims of her attorney and the Chapter 13 trustee are paid, the Defendants will receive a dividend of 2.5%.

The sole purpose of the current case is to avoid the liens of the Defendants that she could not avoid in the Chapter 7 case. No other purpose would be served by the prosecution of this case through the proposed plan. The totality of circumstances indicates that the plan was filed in bad faith. In Tran, the Court came to the same conclusions given the same facts.

> Here, the totality of the circumstances shows that [the debtor] filed this chapter 13 case solely for purposes of avoiding the second deed of trust under circumstances where such avoidance was not available to her in chapter 7, and where no independent reason exists for her subsequent chapter 13 filing. See In re Warren, 89 B.R. at 95 (9th Cir.BAP1988) (holding that the court should not confirm chapter 13 plans "that are in essence veiled chapter 7 cases"); In re Caldwell, 895 F.2d 1123, 1126 (6th Cir.1990).
> Under Tran's proposed chapter 13 plan, only a relatively small amount of arrearages on the debts secured by the first deed of trust are to be cured. No tax debts or other prepetition unsecured priority claims are to be paid; there are none.

Tran, 431 B.R. at 237-38.

The purpose of the Plan in this case violates both the intent and the spirit of the Bankruptcy Code in that it is a clear attempt to circumvent the stricture of the holding in Dewsnup. The Chapter 13 trustee's objection to confirmation will be sustained.

### *Conclusion*

The motions for default judgment seeking a judgment avoiding each of the Defendant's liens will be granted. The Debtor shall lodge a conforming judgment in each adversary proceeding avoiding the appropriate lien.

The Chapter 13 trustee shall lodge an order sustaining the objection to the confirmation of the Debtor's Chapter 13 Plan.

This memorandum shall be filed in the above-styled bankruptcy case and in each of the

above-styled adversary proceedings.

Upon entry of this memorandum the Clerk shall forward a copy to John P,. Goetz, Esq. The Bank of New York Mellon, Wells Fargo Bank, N.A., the Navy Federal Credit Union, and the Chapter 13 trustee.

Entered on this __12th__ day of August, 2011.

_____
William E. Anderson
United States Bankruptcy Judge